IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **BRETT MICHAEL HARRISON,** | § § § | |
| *PLAINTIFF*, | § § | Civil Action No. 1:25-cv-00355 |
| v. | § § | |
| **STEVEN BARKET, JOHN DOE 1, AND JOHN DOE 2,** | § § § | **Complaint for Declaratory Judgment** |
| *DEFENDANTS* | § § § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, BRETT MICHAEL HARRISON, brings this Complaint against Defendants seeking a Declaratory Judgment as to the validity of Defendants' threatened lawsuit against him. Defendants' repeated threats has created a case or controversy that Plaintiff seeks to resolve with this action. In support thereof, Plaintiff respectfully shows the Court as follows:

### I.     INTRODUCTION

1. This is a civil action seeking declaratory relief pursuant to 28 U.S.C. § 2201. The filing of this Complaint is necessary due to Defendants' repeated attempts to extort Plaintiff into settling a fraudulent, fictitious, and defamatory lawsuit that Defendants threaten to bring against Plaintiff should he fail to provide monetary compensation to Defendant Barket, to extort him.

2. This Complaint requests that the Honorable Court declare that the threatened lawsuit intending to name Plaintiff and his associates as defendants is baseless, and that Defendant Steven Barket and as-of-now unknown co-conspirators, Defendants Doe 1 and 2 (hereinafter "Doe Defendants") threatened Plaintiff with fraudulent litigation in the hopes that Plaintiff would agree

to a confidential settlement to prevent the expense of litigation as well as real and perceived reputational harm. They were wrong.

## II. JURISDICTION AND VENUE

### i. *Subject Matter Jurisdiction*

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

4. Plaintiff, Brett Michael Harrison, is an individual and a citizen of the State of Texas.

5. Defendant, Steven Barket, is an individual and a citizen of the State of Nevada.

6. Defendants Doe 1 and Doe 2, upon information and belief, are individuals that are citizens of the State of Nevada.

7. Complete Diversity exists because Plaintiff and Defendants are citizens of different states.

### ii. *Personal Jurisdiction*

8. This Court has specific personal jurisdiction over Defendants because Defendants, through their actions, have purposefully directed activities at the forum state, the relief sought in this case arise out of those activities, and the exercise of jurisdiction over Defendants comports with Due Process under the Fourteenth Amendment.

9. Defendants have engaged in conduct expressly targeting Plaintiff in Texas, including threats of litigation and statements directly related to impacting Plaintiff's business opportunities and reputation within the State of Texas.

10. Defendant's conduct was intended to cause harm to Plaintiff in Texas, where Plaintiff resides and conducts business. Courts have long recognized that harmful acts directed toward a forum can create jurisdiction. *See e.g. Calder v. Jones*, 465 U.S. 783 (1984).

### iii.  *Venue*

11. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim will occur in this district, as the harm caused by Defendants' conduct will be felt most acutely here.

12. Plaintiff resides and conducts substantial business in the Western District of Texas, where Plaintiff has established professional and community relationships. Defendants' actions, including defamatory and libelous statements and threats, will directly damage Plaintiff's standing and reputation within this district. Courts have recognized that venue is proper where reputational harm occurs. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).

13. Defendant has made repeated threats to initiate litigation that would contain false and defamatory statements about Plaintiff. Given Plaintiff's professional and business presence in the Western District of Texas, the propagation of such statements—whether in legal filings, public records, or communications to third parties—will cause reputational damage within this district, thereby making venue proper.

14. Plaintiff is actively engaged in business within Texas, including in the Western District. Defendant's wrongful conduct, including threats and defamatory accusations, will disrupt Plaintiff's ability to maintain business relationships, secure contracts, and pursue professional opportunities in this district. Courts have held that venue is proper where the economic impact of wrongful conduct is felt. *See Sidco Industries, Inc. v. Wimar Tahoe Corp.*, 768 F. Supp. 1343 (D. Or. 1991).

15. Because the effects of Defendant's conduct will be most profoundly felt in the Western District of Texas, and because venue is proper under 28 U.S.C. § 1391(b)(2) when a substantial part of the harm occurs in the chosen forum, this Court is the appropriate venue for this action.

### III.  PARTIES

16. Plaintiff Brett Michael Harrison is an individual domiciled in Austin, Texas. Plaintiff has had significant success in his professional life, and is the Co-Founder and President of Tern AI, headquartered in Austin, Texas. Prior to his current position, Harrison was the Chief Operating Officer of Blockcap Inc., headquartered in Austin, Texas. Prior to that, he was the Chief Operating Officer at EHB Companies in Las Vegas, Nevada. Several years after departing Las Vegas in 2021, Harrison, unbeknownst to him, became a target of Defendant Steven Barket (hereinafter "Barket") due to his influential personal and familial connections as well as his enviable professional success.

17. Defendant Steven Barket is an individual domiciled in Henderson, Nevada. He may be served with process at 1384 Ruby Sky Court, Henderson, Nevada, 89052 or where ever he may be found.

18. Defendant Barket has significant professional expertise in search engine optimization and online reputation management. Upon information and belief, Barket utilizes this expertise to perform "character assassinations" of individuals, actively curating search results and public information to both defend his name and call out what he perceives as wrongdoing.

19. Underneath the public façade of a First Amendment advocate in the digital age lies a darker truth – Barket is a seasoned extortionist. He utilizes his knowledge of search engine optimization and online reputation management to force individuals that he targets to pay him

significant sums of money to prevent further reputational harm. Upon information and belief, Barket is known to utilize fictitious and baseless lawsuits as a method of receiving funds from the individuals that he targets, forcing a 'confidential settlement' to the suit prior to its filing to disguise the ill-gotten nature of the funds.

20. Barket's lack of regard for the truth are well known. As John L. Smith wrote in a Las Vegas Review-Journal article reporting on a United States District Court criminal trial in which Barket was the prosecution's star witness, "Barket is one of those intriguing characters most people would swear didn't exist outside the pages of a crime novel."[1] Smith writes further that "Those who underestimate Barket's vindictiveness do so at their own peril, former associates tell me. Those in law enforcement who use him in future cases are likely to wind up red-faced."[2] Smith emphasized Barket's attitude towards the truth by writing "[n]othing Barket said under cross-examination led me to believe he was more than a gifted con man who apparently has also suckered some law enforcers."[3] The Judge in that case agreed, ultimately dismissing the Defendant's money laundering charges despite strong evidence due to Barket's "questionable veracity."[4]

21. John L. Smith paid a price for his reporting. Barket created a website aimed at assassinating Mr. Smith's character.[5]

22. Plaintiff Brett Harrison is simply the most recent victim of Defendant Barket's extortionist conspiracy, as discussed *infra*.

---

[1] *Michael Bonvicin Seeks Return to Jail Job After Court Case*, *Las Vegas Rev.-J.*, May 2009, available at https://www.reviewjournal.com/news/after-strange-days-in-court-ex-lawman-seeks-return-to-jail-job/.
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *John L. Smith Libel*, available at https://johnlsmithlibel.com/ (last visited Mar. 9, 2025).

23. Defendants John Doe 1 and John Doe 2 are as-of-now unknown co-conspirators that aid and abet Barket in his attempt to extort millions from Plaintiff. As the parties engage in discovery, Plaintiff reserves the right to amend this Complaint to add these individuals by name.

24. Plaintiff has standing to seek declaratory relief because an actual and justiciable controversy exists between Plaintiff and Defendants regarding the validity of the threatened litigation. Defendants' actions have created an imminent threat of harm to Plaintiff's legal rights and business interests in this District.

### IV.   FACTUAL ALLEGATIONS

25. Plaintiff first became aware of Defendant Barket after he approached Plaintiff's former colleague, Vickie DeHart, and her boyfriend, Anthony "Tony" D'Anna, in a Las Vegas restaurant in December of 2024. Barket approached the couple, stating that he was going to "sue her former employee."

26. DeHart and D'Anna were confused, asking who Barket was referring to. Barket then identified Plaintiff, stating that he planned to "take [Plaintiff] for $3-5 million." Barket then proceeded to list off numerous members of Plaintiff's family, stating that Plaintiff "thinks he is untouchable" due to the influence that several of his family members ostensibly hold. Barket refused to say why he was suing Plaintiff.

27. Barket, upon information and belief, made these references to Plaintiff's family to emphasize his perceived leverage over Plaintiff by implying that Plaintiff would not want the negative publicity associated with the lawsuit.

28. DeHart contacted Plaintiff the next day, relaying the substance of their interaction from the night before. This was the first time that Plaintiff had ever heard of Barket. Plaintiff's brother works in Federal Law Enforcement, and used to work in the Las Vegas office before

leaving in 2019. Plaintiff contacted his brother and learned that his brother and his agency were in fact familiar with Barket. However, the brothers had never discussed Barket prior to December of 2024.

29. On Friday, February 28, 2025, Plaintiff received a call from a well-respected attorney in Las Vegas, Oganna Brown, who previously represented Plaintiff in a previous unrelated matter. Brown informed Plaintiff that Barket and his attorney had shown up to her office, demanding a meeting. When Brown agreed to the meeting, Barket and his attorney again made specific mention of Plaintiff's prominent family members, as well as "all the money" that DeHart, who is named in the fictitious lawsuit along with her boyfriend D'Anna, is supposedly coming into.

30. During the meeting, Barket and his attorney, Michael Mushkin, delivered a draft "Complaint" naming Plaintiff as well as DeHart and D'Anna as Defendants.[6] This Complaint, which has the word "DRAFT" in red capital letters stamped on it, alleges that Harrison and the other two Defendants named therein, committed the following tortious acts: (1) intentionally interfering with a five-year contract under which Barket was to be paid a sum of $2,200,000 annually, along with incurred cost, causing the contract to be terminated for a total of $7,000,000 in alleged losses to Barket; (2) knowingly and willfully conspiring to commit unlawful acts, including the intentional interference with Barket's contractual relations and the dissemination of confidential information with the intent to injure Barket and with a willful and conscious disregard for his rights; and (3) assault as to the former colleague's boyfriend only for communicating to Barket in a manner that was threatening and implied an ability to cause harm.[7]

---

[6] *See* Complaint attached hereto as Exhibit A.
[7] *Id.*

31.     It is worth noting that the "Complaint" did not provide any information about the alleged contract, including who the contract was with, who Plaintiff allegedly contacted, and mistakenly states that Plaintiff was employed by EHB Companies in 2024, casting further doubt on the Defendant's claims. It further merits noting that the 'Complaint' contained a Verification Page, which was unsigned.[8]

32.     Further, the allegations contained within the Complaint that Plaintiff and D'Anna are part of a conspiracy aimed at Barket are nonsensical. Plaintiff and D'Anna are only acquainted with each other through their mutual friend, DeHart. The extent of their relationship to date is limited to exchanging pleasantries. Plaintiff does not even have D'Anna's contact information.

33.     Additionally, during the period allegedly at issue in Defendants' Complaint, March and April of 2024, Plaintiff was neither a resident of the State of Nevada, having moved in 2021, nor aware of Defendant Barket's existence, let alone his alleged contractual relationships. The allegations pertaining to Plaintiff are completely made up and are nothing more than an attempt at extortion. Plaintiff will not be extorted.

34.     During the discussion in Brown's office, Barket and his attorney made a thinly-veiled threat, either agree to settle this "lawsuit" before it was filed for a substantial sum of money, or face reputational ruin once the suit was filed.[9]

35.     The entire substance of the Complaint as it relates to Plaintiff Brett Michael Harrison is wholly and unequivocally false, defamatory and libelous, as well as a blatant attempt to extort an innocent man of his hard-earned money.

V.     **CLAIM FOR DECLARATORY RELIEF**

---

[8] *Id.*
[9] *Id.*

36. Plaintiff incorporates, as though fully set forth herein, each and every allegation as set forth above.

37. Plaintiff brings this action pursuant to 28 U.S.C. § 2201 seeking a declaratory judgment to resolve an actual and substantial controversy between the parties, namely the validity of Defendants' threatened litigation.

38. Defendants Barket and Does 1-2 have threatened Plaintiff with litigation containing false assertions of fact with the explicit intent of strongarming Plaintiff into settling the bogus Complaint prior to litigation commencing. In so doing, Defendants have engaged in conduct constituting wrongful threats, including but not limited to: expressly or impliedly threatening reputation harm to Plaintiff unless Plaintiff complies with Defendants' demands; utilizing verbal communications to demand concessions from Plaintiff under the threat of legal action based on knowingly false and defamatory claims; and engaging in conduct that amounts to civil extortion.

39. Plaintiff vehemently contends that Defendants threatened legal action is meritless, made in bad faith, and intended to harm Plaintiff's reputation and business interests in Texas.

40. Defendants' threats of litigation and reputational harm to Plaintiff are intentionally aimed at causing severe and irreparable harm to Plaintiff's professional reputation and personal relationships.

41. Plaintiff is the co-founder and President of Tern AI in Austin, Texas, a company that has received recent press and publications related to their work. Although false, negative publicity related to Plaintiff would detrimentally impact Tern AI's business, as well as Plaintiff's professional reputation.

42. Defendant's threats constitute an attempt to abuse the legal process and an attempt to use litigation as a weapon to extract benefits, a tactic that courts have recognized as unlawful. *See United States v. Koziol,* 993 F.3d 1160 (5th Cir. 2021).

43. Plaintiff seeks a declaratory judgment that the threatened legal action is baseless, unenforceable, and constitutes an unlawful attempt to coerce Plaintiff through wrongful means.

44. Specifically, pursuant to 28 U.S.C § 2201, Plaintiff requests a judicial declaration from this Court that:

(a) Defendant's threatened lawsuit is baseless and unenforceable;
(b) Defendants' threats constitute wrongful extortion and an improper use of the legal process;
(c) Plaintiff has no legal obligation to comply with Defendants' coercive demands; and
(d) Defendants' actions are unlawful and infringe on Plaintiff's rights under both Texas and Federal law.

45. A declaratory judgment is necessary to resolve the uncertainty caused by Defendants' threats and to prevent continued harm to Plaintiff's business and reputation.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, and for the foregoing reasons, Plaintiff prays for a declaratory judgment (1) that Defendant's threatened lawsuit is baseless and unenforceable; (2) Defendants' threats constitute wrongful extortion and an improper use of the legal process; (3) Plaintiff has no legal obligation to comply with Defendants' coercive demands; and (4) Defendants' actions are unlawful and infringe on Plaintiff's rights under both Texas and Federal law. Plaintiff further prays based on the matters herein that this Honorable Court issue such further orders and relief, in law or equity, to which Plaintiff is entitled.

Respectfully submitted,

**THE BUZBEE LAW FIRM**

/S/*David L. Bergen*
David L. Bergen
State Bar No.: 24097371
dbergen@txattorneys.com
Anthony Glenn Buzbee
State Bar No.:  24001820
Admission to Western District Pending
tbuzbee@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

**ATTORNEYS FOR PLAINTIFF**
**BRETT MICHAEL HARRISON**