UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| BRETT MICHAEL HARRISON, § § § *Plaintiff*, § § v. § § STEVEN BARKET, JOHN DOE 1, § AND JOHN DOE 2, § § *Defendants*. § | No. 1:25–CV–00355–DAE |

ORDER GRANTING DEFENDANT STEVEN BARKET'S RULE 12(B) MOTION TO DISMISS

Before the Court is Defendant Steven Barket's ("Defendant" or "Barket") Rule 12(b) Motion to Dismiss filed on April 7, 2025. (Dkt. # 9.) Plaintiff Brett Michael Harrison ("Plaintiff" or "Harrison") filed a Response on April 21, 2025, (Dkt. # 12) and Defendant replied on April 28, 2025 (Dkt. # 13).[1] After careful consideration of the memoranda filed in support of and against the

---

[1] Plaintiff Harrison filed an Opposed Motion for Leave to File a Sur-Reply on May 1, 2025 (Dkt. # 14), attaching its proposed Sur-Reply (Dkt. # 14-1) to the Motion. The Court finds that the circumstances warrant granting leave for Plaintiff to file its surreply, and, within its sound discretion, **GRANTS** the Motion. See Donnelly v. Nissan Motor Co., 2019 WL 6340153, at *2 (W.D. Tex. Nov. 26, 2019) (granting leave to file when surreply directly and briefly addresses new arguments and is not merely trying to have the last word). The Court has considered the Sur-Reply (Dkt. # 14-1) attached to the Motion for Leave as part of the briefing and there is nothing more the Clerk of Court needs to do regarding that filing.

1

motion, the Court **GRANTS** Defendant Barket's Motion to Dismiss (Dkt. # 9) for the following reasons.

BACKGROUND

Plaintiff filed suit against Defendants Steven Barket, John Doe 1, and John Doe 2[2] ("Defendants") on March 10, 2025, seeking declaratory relief pursuant to 28 U.S.C. § 2201.  (Dkt. # 1 at ¶ 1.)  Plaintiff amended his Complaint on March 13, 2025.  (Dkt. # 5.)  In his Amended Complaint, Plaintiff alleges that Defendants are attempting "to extort Plaintiff into settling a fraudulent, fictitious, and defamatory lawsuit that Defendants threaten to bring against Plaintiff should he fail to provide monetary compensation to Defendant Barket[.]"  (Id. at ¶ 1.)  Plaintiff seeks a declaratory judgment as to the validity of the threatened lawsuit and the unlawfulness of Defendants' actions.  (Id. at 1, ¶ 44.)

Plaintiff Harrison is an individual domiciled in Austin, Texas and is the Co-Founder and President of Tern AI, headquartered in Austin.  (Id. at ¶ 16.)  Prior to moving to Austin, Harrison worked in Las Vegas, Nevada before leaving

---

[2] In his Amended Complaint, Plaintiff explains that John Doe 1 and John Doe 2 are "as-of-now unknown co-conspirators" of Barket. (Dkt. # 5 at ¶ 23.)  Plaintiff states that he reserves the right to amend the Complaint to add the individuals by name as the parties engage in discovery.  (Id.)  However, because Plaintiff has not served Defendants John Doe 1 and John Doe 2 within 90 days of the Amended Complaint being filed, the Court hereby **DISMISSES WITHOUT PREJUDICE** Plaintif's claims against Defendants John Doe 1 and John Doe 2.  Fed. R. Civ. P. 4(m).

2

Las Vegas in 2021.  (Id.)  Defendant Steven Barket is an individual domiciled in Las Vegas, Nevada.  (Id. at ¶ 17.)

Plaintiff asserts that in December 2024, Barket approached a former colleague of Plaintiff in a Las Vegas restaurant stating that he was going to sue Plaintiff and "take [Plaintiff] for $3-5 million."  (Dkt. # 5 at ¶¶ 25–26.)  Plaintiff's colleague contacted Plaintiff the next day and relayed the substance of the conversation to him.  (Id. at ¶ 28.)  Plaintiff further claims that on February 28, 2025, he received a call from a Las Vegas attorney who previously represented Plaintiff in an unrelated matter.  (Id. at ¶ 29.)  The attorney, Oganna Brown ("Brown"), informed Plaintiff that Barket and his attorney had shown up to her office and delivered a draft "Complaint" naming Plaintiff, among others, as Defendants.  (Id. at ¶¶ 29–30.)

According to Plaintiff, the complaint delivered to Brown alleged that Plaintiff and the other two defendants (1) intentionally interfered with a five-year contract under which Barket was to be paid a sum of $2,200,000 annually, causing the contract to be terminated for a total of $7,000,000 in alleged losses to Barket; and (2) knowingly and willfully conspired to commit unlawful acts, including the intentional interference with Barket's contractual relations and the dissemination of confidential information with the intent to injure Barket.  (Id. at ¶ 30.)  Plaintiff contends that during the discussion with Brown, Barket and his attorney "made a

3

thinly-veiled threat" to "either agree to settle this 'lawsuit' before it was filed for a substantial sum of money, or face reputational ruin once the suit was filed." (Id. at ¶ 34.)

On the basis of these facts, Plaintiff asserts a claim for declaratory relief. (Dkt. # 5 at ¶¶ 36–45.) Plaintiff alleges that Defendants' "threatened legal action is meritless, made in bad faith, and intended to harm Plaintiff's reputation and business interests in Texas." (Id. at ¶ 39.) Such false publicity would detrimentally impact Tern AI's business and Plaintiff's professional reputation, Plaintiff contends. (Id. at ¶ 41.) Accordingly, Plaintiff seeks a declaratory judgment "that the threatened legal action is baseless, unenforceable, and constitutes an unlawful attempt to coerce Plaintiff through wrongful means." (Id. at ¶ 43.) Specifically, Plaintiff requests a judicial declaration that: "(a) Defendant's threatened lawsuit is baseless and unenforceable; (b) Defendants' threats constitute wrongful extortion and an improper use of the legal process; (c) Plaintiff has no legal obligation to comply with Defendants' coercive demands; and (d) Defendants' actions are unlawful and infringe on Plaintiff's rights under both Texas and Federal law." (Id. at ¶ 44.)

On April 7, 2025, Defendant Barket filed a Motion to Dismiss (the "Motion"). (Dkt. # 9.) In support of his Motion, Barket argues that (1) the Court lacks subject matter jurisdiction over the action; (2) the Court lacks personal

4

jurisdiction over Barket; (3) the Western District of Texas is an improper venue; and (4) Plaintiff's case fails to state a claim upon which relief may be granted. (Id. at 2.) Barket moves for dismissal pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure respectively. (Id.)

## LEGAL STANDARD

I. Subject Matter Jurisdiction

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). Unless otherwise provided by statute, federal district courts have jurisdiction over: (1) all civil actions arising under the Constitution, laws, or treaties of the United States; and (2) civil actions between citizens of different states, where the matter in controversy exceeds $75,000, exclusive of interests and costs. See 28 U.S.C. §§ 1331, 1332(a). The party asserting federal jurisdiction—in this case, Plaintiff—carries the burden of establishing that it exists. Physician Hosps. of Am. v. Sebelius, 691 F.3d 649, 652 (5th Cir. 2012).

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420, 424 (5th

Cir. 2001) (citation omitted). Further, the Court must accept all factual allegations in the plaintiff's complaint as true. Id.

II.     Personal Jurisdiction

When a defendant files a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. Luv N' Care, Ltd. v. Insta–Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006). "A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." Freudensprung v. Offshore Tech. Servs., Inc., 379 F. 3d 327, 343 (5th Cir. 2004) (citing Nuovo Pignone, SpA v. STORMAN ASIA M/V, 310 F.3d 374, 378 (5th Cir. 2002)). Because the Texas long-arm statute permits the exercise of personal jurisdiction to the limits of the Fourteenth Amendment, id., a plaintiff in a diversity action in federal court in Texas need only demonstrate that (1) the defendant purposely availed himself of the benefits and protections of the forum state by establishing that the defendant had minimum contacts with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. Int'l Shoe Co. v. Washington, 326 U.S.

310, 316 (1945); Moncrief Oil Int'l, Inc. v. OAO Gazprom, 481 F.3d 309, 311 (5th Cir. 2007).

Personal jurisdiction can be either specific or general. Mink v. AAAA Develop., LLC, 190 F.3d 333, 336 (5th Cir. 1999). "Where a defendant 'has continuous and systematic general business contacts' with the forum state, the court may exercise 'general jurisdiction over any action brought against the defendant [regardless of whether the action is related to the forum contacts]." Luv N' Care, 438 F.3d at 469. If a defendant has relatively few contacts, a court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum. Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 271 (5th Cir. 2006).

The Fifth Circuit has articulated a three-step test for determining specific personal jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Id. (quoting Nuovo Pignone, 310 F.3d at 378). If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable. Id. At the motion to dismiss stage, the plaintiff is required to present only a prima facie case for

7

personal jurisdiction.  Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co., 517 F.3d 235, 241 (5th Cir. 2008).

## DISCUSSION

Defendant Barket moves to dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. # 9.)  The Court will address Barket's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction before turning to Barket's 12(b)(2) motion to dismiss for lack of personal jurisdiction.  See Rawls v. Old Republic General Ins. Grp., Inc., 489 F. Supp. 3d 646, 652–53 (S.D. Tex. 2020) ("Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter" before addressing objections to personal jurisdiction.").

Because the Court finds that it lacks personal jurisdiction over Barket, the Court does not reach Barket's motions to dismiss under 12(b)(3) or 12(b)(6). See Pervasive Software Inc. v. Lexware GmbH & Co. KG, 688 F.3d 214, 232 (seeing no error in the district court's decision to "dispose of the personal jurisdiction issue first and in not proceeding further after concluding that it lacked personal jurisdiction[.]").

I.    Subject Matter Jurisdiction

In his Motion to Dismiss, Barket argues that the Court lacks subject matter jurisdiction over Plaintiff's action because Plaintiff does not meet the

8

amount-in-controversy requirement. (Dkt. # 9 at 2–3.) Barket contends that the action "does not concern any amount in controversy" and "Plaintiff pleaded no damages." (Id. at 3.) As such, the Court must dismiss the action. (Id.)

To determine the amount in controversy, courts generally accept the sum claimed by the plaintiff if the claim is apparently made in good faith. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–89 (1938); In re 1994 Exxon Chem. Fire, 558 F.3d 378, 387 (5th Cir. 2009). Dismissal is not justified unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998). However, "[w]hen a complaint does not allege a specific amount of damages," has alleged only "an indeterminate amount of damages," or has alleged only "bare allegations of jurisdictional facts," the plaintiff must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount." Magnolia Pearl, LLC v. APT Designs, Inc., No. 1:23-CV-1315, 2024 WL 4922545, at *2 (W.D. Tex. Sept. 16, 2024) (quoting Greenberg, 134 F.3d at 1253).

In an action for declaratory relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." Frye v. Anadarko Petroleum Corp., 953 F.3d 285, 293 (5th Cir. 2019) (citation omitted). In other words, the amount in controversy in such actions is "the value

9

of the right to be protected or the extent of injury to be prevented." Greenberg, 134 F.3d at 1252–53; Allstate Fire & Cas. Ins. Co. v. Love, 71 F.4th 348, 352 (5th Cir. 2023). Thus, "[i]f a plaintiff seeks a declaration regarding liability, the potential liability is the amount in controversy." Rangel v. Leviton Mfg. Co., Inc., No. EP–12–CV–04–KC, 2012 WL 884909, *6 (W.D. Tex. Mar. 14, 2012); see also Dow Agrosciences LLC v. Bates, 332 F.3d 323 (5th Cir. 2003), vacated on other grounds by Bates v. Dow Agrosciences LLC, 544 U.S. 431 (2005) (where plaintiff sought a declaratory judgment that it was not liable to farmers threatening to sue, amount in controversy was damages claimed in demand letters).[3]

Here, the object of the litigation is the lawsuit threatened by Barket. Plaintiff has alleged that Barket threatened to sue Plaintiff and "take [him] for $3-5 million" in connection with the lawsuit. (Dkt. # 5 at ¶¶ 25–26.) He alleged that Barket's draft complaint asserted several causes of action against Plaintiff, including interfering with a contract under which Barket was to be paid $2,200,000 annually. (Id. at ¶ 30.) Although the complaint filed by Barket in Nevada only specifically seeks damages in an amount in excess of $30,000 for general and specific damages, the complaint also seeks punitive damages and attorneys' fees

---

[3] To the extent Barket contends that Plaintiff does not meet the amount in controversy requirement simply because his suit is one for declaratory relief, that contention is without merit. See Allstate, 71 F.4th at 352.

and costs. (Dkt. # 9-1 at 6.) Thus, while it is a borderline case, the Court finds that Plaintiff has shown by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. See Needbasedapps, LLC v. Robbins, 926 F. Supp. 2d 919, 928 (W.D. Tex. 2013) (finding that, although the complaint defendant proposed to file against plaintiff did not specify the total amount of damages sought, the value of the declaratory relief sought by plaintiff was "well over" the jurisdictional amount, as defendant claimed to have incurred losses of $192,000 and sought to recover an additional $20,000); Frye, 953 F.3d at 293 (holding that the value of the object of the litigation "easily exceeds" the jurisdictional requirement where the potential liability was "in the billions").

Accordingly, as the parties do not dispute complete diversity, and indeed the parties are diverse (Dkt. # 5 at ¶¶ 4–6), the Court has subject matter jurisdiction over the action.

II.     Personal Jurisdiction

Plaintiff argues that the Court has specific personal jurisdiction over Barket because Barket "engaged in conduct expressly targeting [Plaintiff] in Texas, including threats of litigation and statements directly related to impacting [Plaintiff's] business opportunities and reputation within the State of Texas." (Dkt. # 12 at 8.) Barket's "extortion and shake down attempt was directed at [Plaintiff], who lived and worked in Austin, Texas." (Id.) These acts are sufficient to satisfy

11

the minimum contacts requirement, Plaintiff argues, because the Fifth Circuit has held that "when a defendant directs tortious conduct towards a plaintiff in Texas, 'the tortious nature of the directed activity constitutes purposeful availment.'" (Id., citing Fintech Fund, F.L.P. v. Horne, 836 F. App'x 215, 221 (5th Cir. 2020).)

However, as the Fifth Circuit has emphasized, even in instances of tortious conduct directed towards a plaintiff in the forum state, the conduct must still "connect [the defendant] to the forum in a *meaningful* way." Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C., 24 F.4th 491, 496–97 (5th Cir. 2022) (emphasis added). That is, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there.'" Revell v. Lidov, 317 F.3d 467, 475 (5th Cir. 2002) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). Here, the Court finds that Plaintiff has failed to plead that Barket's allegedly tortious conduct was meaningfully connected to the state and therefore finds personal jurisdiction over Barket to be lacking. See Danziger, 24 F.4th at 500 ("Because none of [defendant's] allegedly tortious conduct either occurred in Texas or was otherwise meaningfully connected to the state, the district court correctly dismissed [plaintiff's] intentional tort claims for lack of personal jurisdiction.").

In his Amended Complaint, Plaintiff alleges two incidents of Barket making threats and allegedly attempting to extort Plaintiff. (Dkt. # 5 at ¶¶ 25–35.)

12

The first involves Barket approaching Plaintiff's former colleague in a Las Vegas restaurant and allegedly stating he planned to "take [Plaintiff] for $3-5 million." (Id. at ¶¶ 25–26.) The second involves a discussion between Barket and Plaintiff's former attorney in the attorney's Las Vegas office. (Id. at ¶¶ 29–30, 34.) Both of these incidents took place entirely in Las Vegas, Nevada. Moreover, the lawsuit Barket allegedly threatened to file, and which Barket did indeed file, was filed in Nevada, not in Texas. (Dkt. # 9-1.)[4]

Indeed, Plaintiff does not allege that *any* of Barket's conduct forming the basis of the Amended Complaint occurred in Texas. (See dkt. # 5.) He does not allege that Barket ever traveled to Texas, that he sent any communications to Plaintiff in Texas, or that he even directed a third party to contact Plaintiff in Texas. (See id.) The Amended Complaint merely asserts that "Defendants have engaged in conduct expressly targeting Plaintiff in Texas" (Dkt. # 5 at ¶ 9) but provides no factual allegations to support this assertion. See Dynamic Robotic Sols., Inc. v. Simwon Tech, Inc., No. 1:23-CV-00070, 2024 WL 3404804, at *5 (W.D. Tex. July 10, 2024) ("Plaintiff's pleadings must contain 'factual allegations that reasonably suggest that personal jurisdiction exists.'") (quoting Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 429 (5th Cir. 2005)). These allegations

---

[4] In resolving the question of whether the Court has personal jurisdiction over a defendant, the Court may consider the contents of the record. Sangha v. Navig8 ShipManagement Priv. Ltd., 882 F.3d 96, 101 (5th Cir. 2018).

do not demonstrate that Barket's conduct connects him in any way to Texas, much less "in a meaningful way." Danziger, 24 F.4th at 496–97.

The cases Plaintiff cites to support his argument differ in important ways from the facts at issue here. In Fintech, the court found that the defendant had sufficient minimum contacts with the forum state of Texas because he "directed his allegedly tortious conduct at Texas, and he directed it at a Texas entity that he knew was a Texas entity." Fintech, 836 F. App'x at 221. However, in that case, the defendant "purposefully called and emailed [the plaintiff]" who was in Texas at the time. Id. In the instant case, on the other hand, Plaintiff has not alleged that Barket contacted him in any way. Thus, even if Barket knew that Plaintiff resided in Texas at the time of the alleged threats and extortion attempts,[5] Plaintiff has not alleged that Barket directed any tortious conduct toward Texas, as was the case in Fintech. That distinction is determinative in the Court's analysis here.

Plaintiff's reliance on Calder v. Jones is equally unavailing. In Calder, a California resident sued two Florida residents for libel on the basis of an

---

[5] The parties dispute whether Barket knew that Plaintiff lived in Texas when he filed his lawsuit. (See dkts. ## 13 at 2, 14-1 at 1). When facts are disputed in this context, conflicts are resolved in the plaintiff's favor. Wein Air Alaska, Inc. v. Brandt, 195 F.3d 208, 211 (5th Cir. 1999). Therefore, in its analysis, the Court has presumed that Barket knew Plaintiff resided in Texas when he allegedly threatened Plaintiff with the Nevada lawsuit.

article written in Florida but published in a national magazine with a large readership in California.  465 U.S. 783, 784–86 (1984).  The Supreme Court found that jurisdiction over the defendants in California was proper, explaining:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of [sic.] respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered.

Id. at 788–89.  The facts here are distinct from those in Calder.  In this case, Barket has allegedly threatened to file a lawsuit against Plaintiff in Nevada.  (See dkt. # 9-1.)  The lawsuit concerns activities that occurred entirely in Nevada.  (See id.)  Further, all of the alleged threats and extortion attempts took place in Nevada.  (See dkt. # 5 at ¶¶ 25–35.)  And although Plaintiff has asserted that negative publicity would detrimentally impact his business and his professional reputation in Texas, he has not identified how such false publicity would be communicated to third parties in Texas.  (Id. at ¶ 41); see Walden v. Fiore, 571 U.S. 277, 287–88 (2014) (noting that a key to aspect of the Supreme Court's finding in Calder was that the reputational injury would not have occurred but for the defendants' article being published in California and read by a large number of California citizens).  These differences strengthen the Court's conclusion that

Barket lacks sufficient minimum contacts with Texas to satisfy the Court's exercise of personal jurisdiction over him.

In reaching this conclusion, the Court is guided by the Supreme Court's analysis in Walden v. Fiore, 571 U.S. 277 (2014). In that case, a Georgia law enforcement officer seized cash from two Nevada residents traveling through Georgia and withheld its return for an extended period of time. Walden, 571 U.S. at 279–81. The Court of Appeals held that the district court had jurisdiction over the officer because the plaintiffs suffered foreseeable harm in Nevada and the officer knew of their strong ties to the state. Id. at 282, 289. The Supreme Court reversed, however, holding that the Court of Appeals' approach "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." Id. at 289. The Court rejected the notion that minimum contacts are established merely because a defendant directs conduct at plaintiffs with known forum connections. Id. This reasoning "improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis." Id. Instead, the proper inquiry is whether "the defendant's conduct connects him to the forum in a meaningful way." Id. at 290. Because no part of the officer's conduct occurred in Nevada, and he never "traveled to, conducted activities within, contacted anyone in, or sent anyone to

16

Nevada," the Court held that the district court lacked personal jurisdiction. Id. at 288–89.

The facts of this case are substantially similar to those of Walden. Here, no part of Barket's conduct is alleged to have occurred in Texas. He is not alleged to have traveled to Texas or contacted anyone in Texas. While Plaintiff alleges that he will experience harm in Texas and that Barket knew this when he allegedly engaged in tortious conduct, any potential harm is "not because anything independently occurred [in Texas], but because [Texas] is where [Plaintiff] chose to be at the time[.]" Walden, 571 U.S. at 290. Therefore, just as the Supreme Court found jurisdiction to be lacking in Walden, the Court finds the same here.

Because the Court concludes that Plaintiff has failed to establish Barket's minimum contacts with Texas, it does not reach the question of whether the exercise of jurisdiction would violate notions of fair play and substantial justice. Moncrief Oil Intern., Inc. v. OAO Gazprom, 481 F.3d 309, 314-15 (5th Cir. 2007).

CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss. (Dkt. # 9.) The case is therefore **DISMISSED WITHOUT PREJUDICE** so that the Plaintiff, should he choose to do so, may refile his lawsuit in the District of Nevada.

17

The Clerk is **INSTRUCTED** to **CLOSE** the **CASE**.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, October 6, 2024.

_____
David Alan Ezra
Senior United States District Judge